ANNETTE L. HURST (Bar No. 148738)
Annette.Hurst@hellerehrman.com
ELISABETH R. BROWN (Bar No. 234879)
Elisabeth.Brown@hellerehrman.com
HELLER EHRMAN LLP
333 Bush Street
San Francisco, CA 94104
Telephone: +1 (415) 772-6000
Facsimile: +1 (415) 772-6268

JOHN C. ULIN (Bar No. 165524)
John.Ulin@hellerehrman.com
333 South Hope Street, 39th Floor
Los Angeles, CA 90071
Telephone: +1 (213) 689-0200
Facsimile: +1 (213) 614-1868

Attorneys for Plaintiff
WHAM-O, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Wham-O, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>BIG TIME TOYS, LLC, a Tennessee limited liability company,<br><br>Defendant. | Case No.: Case No.: C 08-00841 PVT<br><br>**JOINT CASE MANAGEMENT STATEMENT** |

In accordance with the Court's Standing Order and the Order Setting Initial Case Management Conference and ADR Deadlines, the parties hereby submit this Joint Case Management Conference Statement in advance of the Case Management Conference scheduled for June 10, 2008 at 2:00 p.m.

## I. JURISDICTION AND SERVICE

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1131, 1138, and 1367.

### B. Venue

Venue is proper within this district under the provisions of 28 U.S.C. §1391.

### C. Personal Jurisdiction and Service

Plaintiff Wham-O, Inc. ("Plaintiff" or "Wham-O") has served Defendant Big Time Toys LLC ("Big Time" or "Defendant") and Defendant does not contest service or personal jurisdiction. No party remains to be served.

## II. DESCRIPTION OF THE CASE

### A. Facts

#### 1. Plaintiff's Allegations of the Facts

For almost fifty years, Wham-O and its predecessors have engaged in the business of manufacturing and marketing in interstate commerce toys called "water slides" sold under the SLIP 'N SLIDE® trademark (U.S. Reg. No. 761,883). Since the introduction to the public of the SLIP 'N SLIDE water slide toy in 1961, the water slide portion of Wham-O's SLIP 'N SLIDE water slide toy has been colored yellow, and that color has long served to identify and distinguish Wham-O's water slide toys from those of others. Wham-O and its predecessors have sold millions of yellow water slides under the SLIP 'N SLIDE trademark, and Wham-O has consistently promoted the YELLOW WATER SLIDE® mark on its packaging, creating a direct consumer association between the SLIP 'N SLIDE word mark

2

and the registered YELLOW WATER SLIDE mark (U.S. Reg. No. 1,432,069). By virtue of almost fifty years of use, promotion and sales, the YELLOW WATER SLIDE mark has become famous. As a result of lengthy use and compliance with statutory requirements, this registration has attained incontestable status. In December 2007, the United States District Court for the Central District of California (*SLB Toys USA, Inc. v. Wham-O*, Case No. CV 06-1382 RSWL (CWx)) (the "*SLB* case") adjudicated the YELLOW WATER SLIDE mark valid and famous.

Defendant Big Time also manufactures and markets water-related toys. On or about May 30, 2007, Wham-O learned that Defendant had manufactured and sold a water slide toy, called the "Finding Nemo Wacky Wild Waterslide", that depicted a water slide with a yellow sliding surface on the packaging, even though the slide itself was orange. Compl. Ex. 4. Such misleading and infringing packaging was precisely the same conduct that resulted in a $6 million judgment, plus nearly $2 million in attorney's fees, in the *SLB* case. On June 12, 2007, shortly after learning of this infringement, Wham-O notified Defendant that its "Finding Nemo" water slide toy infringed Wham-O's intellectual property rights and demanded that it immediately stop selling or discontinue use of the infringing product. Compl. Ex. 5. Eventually Big Time responded to Wham-O's demands, stating that it would consider discontinuing use of the infringing colors in the "next production." Compl. Ex. 8. Wham-O understood that to mean that Defendant would cease using its mark for future manufacturing and, given that it was the end of the toy season for water slides, Wham-o believed that this concluded the matter.

Subsequently, on around October 12, 2007, Wham-O issued a press release announcing its jury verdict in the *SLB* case and that Central District's decision to sustain Wham-O's YELLOW WATER SLIDE mark. Compl. Ex. 9. The jury verdict and the accompanying press release generated a great deal of discussion in the toy industry and Wham-O received a congratulatory message from Defendant Big Time, which acknowledged Wham-O's victory and the court's decision to sustain Wham-O's YELLOW WATER SLIDE mark. Compl. Ex. 10.

3

Despite Defendant's promise to cease using its mark and its subsequent congratulatory message, on January 17, 2008, Wham-O learned that Defendant *continues* to sell its water slide toys in the same infringing packaging at Target stores. Incredibly, Defendant—knowing of a prior jury verdict for willful infringement, intentional false advertising, and willful dilution and in apparent deliberate disregard thereof—undertook, and continues to undertake, the very same course of conduct that resulted in the nearly $8 million judgment in that case.

### 2. Defendant's Allegations of the Facts

As stated in Plaintiff's statement, this matter focuses on an image on a box, not an infringing product. The product at issue, Big Time's "Finding Nemo Wacky Wild Waterslide" (the "Product") is in fact orange – not yellow. Moreover, there should be little dispute that the distinguishing characteristic of the Product is the use of well known Disney characters, through a license with Disney, not the color of the slide. There is no dispute that Big Time has never sold a yellow Product. The sole issue in this matter involves the sale of certain numbers of the Product in a package depicting a yellow colored slide.

Big Time sold approximately 12,000 packages with a yellow color waterslide displayed on the box in 2007. After receiving Wham-O's demand to cease selling the Product with a yellow colored waterslide displayed on the package, Big Time agreed to stop any further production of boxes depicting a yellow waterslide. Without admitting any of the Plaintiff's assertions, Big Time agreed to change the color of the waterslide displayed on the box to a non-yellow color.

As promised, the packaging for the Product was changed for the 2008 season; however, approximately 3,000 waterslides (remnant inventory from last year) were sold to Target late last year. It is Big Time's understanding that no other retailers have the Product with the yellow-colored waterslide packaging; instead, Big Time believes that all other retailers have Products that depict an orange-colored waterslide on the packaging – the actual color of all of the waterslides.

Big Time has taken steps to ensure that no further Products will be sold by Big Time with a yellow waterslide on the packaging. Moreover, because of the unique design of the Product, and its Disney demarcations, there is little chance that consumers will be confused that the Product has been manufactured by Plaintiff. The fact that few units remain in the marketplace further ensures that confusion is highly unlikely. It is also important to note that Big Time did not make a profit on the sale of any of the units of the Product contained in the allegedly infringing packaging. Plaintiff is fully aware of this fact. Moreover, Plaintiff does not assert that the existence of the Product has prevented Plaintiff from earning profits itself. Accordingly, this is not a typical damages matter. It is Big Time's assertion that there is nothing left to be done and by having changed the packaging for all future Product, there is no further risk of harm to Plaintiff.

### B. Legal Issues

#### a. Plaintiff's Identification of Legal Issues

Wham-O contends that Defendant's use of the color yellow in connection with the manufacture, advertisement, distribution and sale of water slides damages the value of Wham-O's rights in the YELLOW WATER SLIDE mark and is likely to injure the business reputation and goodwill of Wham-O. Defendant's marketing, advertising, sale and promotion of its water slides in packaging depicting a yellow colored sliding surface creates a likelihood that a false and unfair association will be made between the water slides of Defendant and those of Wham-O because the purchasing public is likely to believe that Defendant's water slide toys are connected with, or produced or sponsored by Wham-O. What is more, Defendants refusal to remove the offending slides from the shelves of its retail customers, despite its promise to do so and its acknowledgment of the ruling in the *SLB* case confirm that Defendant's conduct is willful.

#### b. Defendant's Identification of Legal Issues

Big Time denies the allegations of Plaintiff. Plaintiff is unable to state a claim upon which relief may be granted because, among other things, Big Time has committed no

5

unfair act, the alleged trademark is generic, functional, lacks secondary meaning and there is no likelihood of confusion with Big Time's Product.  There is no evidence of willful misconduct as Big Time took immediate steps to change its packaging after receiving notice from Plaintiff.  Additionally, Big Time has affirmative defenses of accord and satisfaction, estoppel and waiver.

### C. Relief Sought

Plaintiffs assert that they are entitled to a judgment that Defendants have engaged in willful infringement, willful trademark dilution, and willful false advertising.  Plaintiff seeks to recover all profits attributable to Defendant's conduct, and, because their conduct was willful, a trebling of these profits.  In light of Defendant's willful conduct, Wham-O requests a finding that this case is exceptional and that an award of attorney's fees is justified.  In addition, Wham-O seeks a permanent injunction restraining and enjoining Defendant, and all of its agents, successors, and assigns, and all persons in active concert or participation with any of them, from using the color yellow in connection with the distribution, sale or offering for sale of water slide toys, or any other mark, alone or in combination with other words or symbols, that is confusingly similar to WHAM-O's YELLOW WATER SLIDE, or which is likely to cause confusion or mistake or to deceive, including any use on Defendant's website and on the Internet.

Big Time asserts that it is entitled to judgment in its favor as follows: (1) That Plaintiff takes nothing by its Complaint; (2) For costs of suit, including reasonable attorneys' fees; and (3) for such other and further relief as the court may deem just and proper.  As there are no recoverable damages being sought in this matter, Plaintiff is seeking nothing more than a declaration of rights.

### III. MOTIONS

At present, no motions have been filed.  The parties anticipate that, barring a settlement of this action, summary judgment motions will be filed.

IV. **AMENDMENT OF PLEADINGS**

Plaintiff does not anticipate filing an Amended Complaint at this time.

V. **EVIDENCE PRESERVATION**

The parties have taken reasonable steps to preserve documents within their possession and control and appropriate litigation holds are in effect. Moreover, in connection with the *SLB* case, Wham-O has previously collected and preserved documents relating to the YELLOW WATER SLIDE mark including, *inter alia*, the validity of the YELLOW WATER SLIDE mark, Wham-O's sales of water slide toys using the YELLOW WATER SLIDE mark, and Wham-O's marketing and advertising of the YELLOW WATER SLIDE mark.

VI. **INITIAL DISCLOSURES**

The Court has ordered the parties exchange Initial Disclosures on June 3, 2008 and the parties have confirmed their intention to comply with this order and identify the potential witness and the categories of documents in their possession and control.

VII. **DISCOVERY**

A. **Discovery Schedule**

No discovery has taken place to date. The parties propose the following schedule which includes specific deadlines and an approximate trial date:

| Event | Date |
| --- | --- |
| Initial Disclosures | June 3, 2008 |
| Produce all Documents and Privilege Logs | November 2008 |
| Close Fact Discovery | January 2009 |
| Expert Discovery | |
| Each party identifies experts on issues for which party bears the burden of proof | February 2009 |
| Opening Reports | February 2009 |

7

JOINT CASE MANAGEMENT STATEMENT
Case No.: C 08-00841 PVT

Heller Ehrman LLP

| | |
|---|---|
| Rebuttal Reports | March 2009 |
| Close of Expert Discovery | April 2009 |
| Hearing on Dispositive Motions | May 2009 |
| Trial | July 2009 |

### B. Discovery Limits

At this time, the parties do not foresee a need to vary the presumptive limits on discovery set forth in the Federal Rules of Civil Procedure. If, as discovery progresses, Plaintiffs or Defendants believe they need additional discovery beyond what is contemplated by the Federal Rules, they will first attempt to meet and confer and then seek any relief that is necessary.

### C. Electronic Discovery and Document Production

The parties agree to produce electronic information and documents in a TIFF format with certain metadata included if available (i.e., file location, author/sender, recipient, date created, last date modified, date sent, attachment cross-reference, page breaks), and that parties produce electronic documents in a text searchable format, to the extent the original documents are text searchable. The parties further agree to produce specifically identified documents in native format, to the extent such document is not reasonably readable in a TIFF format. With respect to hard copy documents, the parties agree either to scan and produce these documents in a TIFF format, with appropriate page breaks, or produce said documents in paper format. These documents should be produced in an order that replicates how they were kept in the ordinary course of business, and the production will include associated file folder headings, post-it notes, etc.

## VIII. CLASS ACTIONS

This case is not a class action.

## IX. RELATED CASES

There are no related cases or proceedings pending before another judge of this court, or before another court or administrative body.

8

JOINT CASE MANAGEMENT STATEMENT
Case No.: C 08-00841 PVT

## X. SETTLEMENT AND ADR

The parties have engaged in informal settlement discussions and, pursuant to Local ADR Rule 3-5, have agreed to court-sponsored mediation.

## XI. CONSENT TO MAGISTRATE JUDGE FOR ALL PURPOSES

Both parties decline to proceed before a Magistrate Judge for all purposes.

## XII. OTHER REFERENCES

Pursuant to the Standing Order's of Magistrate Judge Trumbull, upon reassignment of this case to a United States District Court and absent a court order, the case will be referred to Magistrate Judge Trumbull for all discovery purposes. The parties see no need for any other reference.

## XIII. NARROWING OF ISSUES

This is a fairly simple and straightforward case. The parties agree it is neither necessary nor desirable to bifurcate issues for trial.

## XIV. EXPEDITED SCHEDULE

The Parties do not believe this is the type of case that can be handled on an expedited basis with streamlined procedures.

## XV. TRIAL

Plaintiffs have requested a trial by jury and the parties estimate the trial will last one to two weeks.

## XVI. DISCLOSURE OF NON-PARTY INTERESTED ENTITIES OR PERSONS

The parties have filed their respective "Certifications of Interested Entities or Persons" as required by Local Civil Rule 3-16. Plaintiff Wham-O is owned by Cornerstone Overseas Investments, Ltd.

Date:  June 3, 2008

By: ____/s/ *Annette L. Hurst*_____          By: __/s/ *John W. Peterson*_____
    Annette L. Hurst                                      John W. Peterson
    Attorney for Plaintiff                                Attorney for Defendant

Heller Ehrman LLP

9

JOINT CASE MANAGEMENT STATEMENT
Case No.: C 08-00841 PVT

**ATTESTATION OF E-FILED SIGNATURE**

I, Annette L. Hurst, attest that John W. Peterson has read and approved the Joint Case Management Conference Statement. I will maintain records of Mr. Peterson concurrence in our files that can be made available for inspection upon request.

/s/ *Annette L. Hurst*
Annette L. Hurst